My name is James Inger and I represent the Appellants, Plaintiffs Below Strategic Diversity, and Kenneth Weiss. And this essentially was an action to rescind a securities purchase on grounds of fraud and mistake pursuant to claims arising both under federal law and Arizona state law, which was dismissed on summary judgment, we believe, erroneously. And I won't belabor the facts, but very briefly, what had occurred here is that the plaintiff, Kenneth Weiss, had come into contact with this company, Alchemix, which is an energy development company that claimed to have a way of converting garbage into hydrogen, and had initially agreed to loan them $500,000, which he did in the summer of 2001. And in connection with that loan, he did the loan through a company he had set up specifically for that purpose, Strategic Diversity. And about a year later, the owner of the company, Robert Horton, came to him and said, we have a new investor coming into the company, an outfit called Western Oil Sands, and as part of their agreement to come in and put approximately $30-plus million into the company, first they're requiring that this loan be paid off. They're requiring that you give up various rights that had been negotiated in connection with that loan, such as anti-dilution rights, the rights to make further advances to the company. Had a seat on the board of directors. Counsel, we're familiar with the facts. The question I have about this case that I think is your biggest impediment is the ability to show damages. Okay. Let me talk about that, Your Honor, because I think, as you know, what the district court said was that there was no showing of damages because there was no evidence that the stock wasn't worth what was paid for it at the time that Mr. Weiss brought it. I mean, as a general matter, stock, I mean, you pay your money, take your chances with stock, right? Well, to some extent that's true, Your Honor, but you don't take your chances that someone has lied to you about the nature of the business or the value of the stock. And your position, as I understand it, is that while you think you have shown damages, you also think that if you're seeking rescission, you don't have to show damages. And that's precisely the point, Your Honor, and I'm about to get to that, that the – I think the district court clearly under Arizona law was erroneous. But you have to show – even for rescission, you have to show some pecuniary loss. In Arizona, Your Honor, that's not the law. And in fact, in Arizona, it's always been the law that when you're seeking rescission either on grounds of fraud or mistake, there are only three elements. You have to show that a misrepresentation was made, you have to show that it was material, and you have to show that it induced the transaction. This has been the law in Arizona. Now, what case are you relying upon from Arizona law that supports your argument that for a rescission cause of action, no pecuniary loss has to be shown? What's the – what's the pivotal case for that proposition? Well, probably the most pivotal case, since it deals specifically with securities, is the Grand v. Nocchio case, the 2006, what's called the – we refer to it as the Grand v. Nocchio I decision, because there were two Grand v. Nocchio decisions. However, this has been part of Arizona law since the McCarroll v. Turberville decision in 1938. Didn't the – didn't the district court interpret that very opinion in saying that there was no valid rescission claim? That's the curious thing about the district court's opinion, Your Honor, because as I said, there are two different Grand v. Nocchio cases. There's a 2006 case and there's a 2009 case. Which one are you relying on? The 2006 case. Okay. If I might, Your Honor, I remember the citation is 2014-something. But I'd have to pull it up. Let me just – hold on a second. I'm trying to work this iPad. Let's see here. It's 2014, Arizona 9. And the Grand v. 1 case specifically dealt with the question of whether you had to show damages to rescind a securities purchase. And, in fact, the trial court decision was very much the same, almost identical in its wording to the district court's decision here. The trial court had dismissed because plaintiff hadn't shown that the claimed loss in the value of the stock was due to the frauds that had been committed. Tell me the language in this case, the first Grand case that you're saying stands for the proposition that no pecuniary loss is required in a rescission, for a rescission claim. What page? What page are you on? I'm on page of the 214, Arizona. It's pages 18 and 19. And, in fact, the question specifically put to the court was whether or not the plaintiff had to show damages to rescind a securities purchase. I didn't say damages. I said pecuniary loss. By whether they had to show, well. There's a difference. There is a difference, but what the court held was that damages was simply not an element of the claim. I'm not talking about damages. I'm talking about pecuniary loss. So what language in this case talks about pecuniary loss? Well, Your Honor, that simply wasn't an issue. That phrase, that way, that wasn't the issue that was put before the court. But that's my question. And I think that's the problem I have with your rescission claim, is that you make the argument that no pecuniary loss is required, and I'm asking you, what case supports that proposition? And, again, I think that's inherent in what happened in Grand v. Nokia. While they didn't use that language, the issue before the court was whether the plaintiff had to show a loss. And in that instance, it was a decline in value. Damages. Damages had to be shown. That's different. Well, but, Your Honor, the issue really that was before the court was, did the plaintiff have to show that it had suffered some sort of loss? And the court very bluntly said, in a rescission action, that is not required in Arizona under our State statutes. The statute specifically says that if the securities laws are violated, the purchase is voidable at the option of the purchaser, and the purchaser thereafter can recover back the compensation or consideration paid for the securities, minus any dividends received. Now, in your opening brief, did you make this argument? Yes, we did, Your Honor. And we made it to the district court below. Oddly enough, what the district court looked at and what it cited to in its decision was the Grand v. Nocchio II case 3 years later, which didn't deal with this issue at all. The only issue raised in the second decision was what it means to be a participant in the sale. Page 38 of your brief. Do you have your brief? I do. It says that you're not seeking recovery of damages based on a decline in the value or misrepresentations regarding the value of the stock purchased. So what is the premise for your pecuniary law stand if it's not based on the value of the stock? Your Honor, what we're saying is we are not making a damage claim. And the Arizona statute says that. That was my point, that you're not making a damages claim. So what is the pecuniary law stand? The compensation or the consideration paid for the stock. That's another way of saying the value of the stock. In a sense, that's true, Your Honor. One thing that strikes me as odd in the rescission cases is it seems like the whole reason you're trying to get a rescission is to avoid a loss. So I think what we're talking about is a situation in which if there is no rescission, there's going to be a loss. And you're correct, Your Honor. And there was, in fact, evidence that the stock had declined fairly precipitously in value after this sale. But the fact of the matter is the point to the Grand v. Naccio decision is that under the Arizona statutes, the question of damage and decline in value of the stock just simply isn't an issue when you are dealing with rescission because the statute specifically permits, the remedy is built right into the statute, that if you're seeking rescission, you have the right to void the transaction and recover back the consideration that was paid. And so what the Court said essentially is nobody would get into the issue. I mean, I think what Judge Hugg is suggesting is your motive for doing that, your client's motive for doing that, is really to avoid a loss that otherwise he would incur. So there was a loss, even though you're saying you don't have to show that. But if we were to disagree with that, there is implicit in the situation a loss. That's absolutely correct, Your Honor. And the point I was trying to make is we're not suing for that loss. That's not the nature of our claim. We're not trying to show the value on day one and the value on day two. We're seeking the alternative remedy permitted under the statute, which is a rescission and recovery back of the consideration. But indeed, the evidence was that there was a decline in the value of the stock. Ginsburg. What's the consideration you're seeking to recover? The dollar a share that was paid for the stock. And as I say, this issue was exactly what the Court was looking at in Grand v. Nokia 1, the 2006 decision, is whether that kind of showing needed to be made for a rescission case. And again, the Arizona court's approach to it. And I understand, you know, the 1934 Act is different. And in fact, the language of the 1934 Act is different than that of the State Act. The 1934 Act does not have this language saying that the contract is voidable if, in fact, there's been a violation. But under the Arizona statute, that's why I was saying that I think under the Arizona law, both under the common law from the McCarroll case through the Leonard v. City of Phoenix case, it's always been the law in Arizona that if there's been a fraud or a mistake, you can rescind the transaction and recover back the consideration paid. That essentially is what the State Act does. So are you conceding that you have to show more under the 1934 Act? Well, Your Honor, I think it's not clear under the 1934 Act. Well, that may be, but what's your position? My position is, and it's the reason I had brought the Tenth Circuit case in Holdsworth to the Court's attention, I think that essentially the same rule should apply under the 1934 Act. And, in fact, what the Tenth Circuit had said on this issue was that in a situation where a person has been defrauded into making a deal they wouldn't have made had they known the truth, there is legal injury just from the fact that they've been embroiled in that transaction that they wouldn't have made otherwise, and they should be allowed to get out of it by rescinding the transaction. I, like I say, I frankly couldn't find any precedent from this circuit dealing with this issue, and so it isn't clear what the law should be under the 1934 Act. But I do believe it should be, that a rescission should be allowed as in Arizona simply on proof that there was a material misrepresentation that induced the transaction. So just for the record, the misrepresentations in your view were the facts that Mr. Horton had been investigating previously and what was the other one? That Western Oil Sands had decided to go forward with its investment under their memorandum of understanding and the omission. Was there an express representation regarding the extent to which Western, was it Western Horizons, is that the name of it? Western Oil Sands. Didn't they indeed go forward? No, they did not. They did not. They made an investment. Well, they had made essentially a down payment, and the question, and that was done in June. The transaction with Weiss occurred in early July. And the question was whether they were going to go forward essentially with the next step of the transaction. And you're saying that Mr. Horton expressly said they were going to go forward the next step? Yes. Yes. Where is that in the record? That is in Mr. Weiss's deposition testimony, and I couldn't cite the ER page for you off the cuff. I think it's pages, I want to say. So it's based on the testimony of Mr. Weiss. Nothing in writing, nothing other than his testimony. No. There's nothing in writing. All right. Thank you. You want to save some time for rebuttal? I would like to save some time for rebuttal, but if I could make just one comment. I don't know if there's a concern about the statute of limitations issue. Well, maybe we should explore that with opposing counsel and then on rebuttal if you're not satisfied with our exploration. Okay. Thank you. I appreciate it. Thank you. To please the Court. Thank you, Your Honors. My name is Steve Tully. I'm here on behalf of Alchemist, the Hortons, and Medici, the defendants in the underlying matter and the Respondents herein. Briefly, I think to understand this case, and I think you have a good, it sounds like you have a good handle on the facts, there are kind of bizarre facts in this case. And I think to understand the case, you have to start with that. I mean, the claim is that strategic diversity loaned half a million dollars to the Alchemist Corporation, was paid back all of that money, plus interest, plus penalties, $560,000 plus. And then separately, Mr. Weiss purchased stock from Medici for half the then going price of the stock. Was it for a dollar a share? A dollar a share when the only evidence is that the only sales in that recent time to Western Oil Sands were for $2 a share, and in fact, the rate on the convertible note was $2 a share. But the allegation is that he did so in reliance on an oral misrepresentation. Correct. Now, that's the allegation. So the claim is that there are these two, and I think this goes to some of the question you had on the damages issue, so I want to make it clear. So the claim is there's these two transactions for separate people. I mean, Alchemist is out $560,000 by paying back strategic diversity. It gets nothing. It was not out. It was loaned and repaid. Right. Right, right. That's what I'm saying. It was loaned half a million dollars and paid back, and then that plus interest. So it is, at that point, the corporation is short, is now debted. You know, it has $560,000 less to operate with at this point. But there were other pretty significant matters that were of value other than just the amount of that note. It was the ability to lend more. It was the ability to do other things other than just get the repayment of the note. So he wants to be put back in the position he was. Yes, Your Honor. And that's what I wanted to address to you. Initially in the complaint, it was a deal. It was a deal that was sought by both sides. Certainly not your client wasn't just a passive participant. They actively thought they wanted his resignation from the board. They wanted a bunch of things. He wanted a bunch of things. And the deal has many unusual elements, but the bottom line is, he says, he never would have entered into this deal but for the misrepresentation. Correct. And I want to address both those issues. If I could, if I just, I wanted to, if I might, just explain one of the initial confusions here. Initially he asked for return status quo ante. Right? Return, somehow undoing both deals. That's impossible. That's impossible, and I can explain why at length. Then at the hearing on motion for summary judgment, the relief sought was, well, on direct questioning by the court, do you want to return the $560,000-plus to Alcomex? He said, well, no, I don't really want to do that. What I really want you to do is something different than precision, which is get everybody back to where they were. But I want you to pretend that the $250,000 that I paid for stock was actually a loan back to Alcomex and determine that that amount is now owing on the note and in default and create sort of a whole new reorganization. And then as we sit here today, you know, I understand in response to questioning, he says, well, just give me the $250,000 back. Well, these are different. So in your view, true rescission would be for strategic diversity to give back the $560,000, right, to Alcomex, and then Alcomex take the stock back. And so that's what true rescission would be if you were going to undo everything. Right. If you were going to try to undo everything, which I think is impossible here, you would have to But the district court didn't decide that, oh, yes, there's a theoretical rescission possible, a theoretical rescission being claimed here, but it's not possible to actually do it, and that's the reason I'm awarding summary judgment. Correct. So, I mean, that's an interesting argument, maybe one you can raise here, but it certainly wasn't the approach of the district court. Correct. So we can affirm on any basis that supports the district court decision, so. Correct. So, you know, under the statutory provisions, you can't go back and reinstitute a note that lapsed five years ago, try to force strategic diversity to give back money to Alcomex, then ask another entity, Medici, to pay Mr. Weiss money in return for stock that Mr. Weiss now has to give to Medici because there's four separate parties here. What if Medici doesn't have $250,000 to give him, but strategic diversity has $560,000 to give to Alcomex? I mean, the thing, it is, and how do you reinstate a security interest that has now been given to other parties? I mean, it is a, the relief sought is not available for the claims that the plaintiff has brought under the claim. So the only possible claim is some type of pure equity of the court, and as the case I cited. I don't follow why you say it's impossible. Well, Your Honor. You can pay back the note. You can pay back the amount from the note. You can give the return of the stock. What is it that's impossible? Your Honor, the security interests in the patents, for instance, have been given to another entity now in exchange for loans to the company. So you would have to go back and try to undo security interests that exist currently with another entity that, by the way, hasn't paid, the company hasn't been paying. So you have to take the security away from somebody who currently exists and give it to another in exchange for new monies put in. And, you know, I don't believe that that's possible. So is that the only thing, the security interest in the stock, that makes it impossible? The security interest in the patents. Well, you know, again, I have to look at it, but I don't know that you can. You know, what would the term of the note be? Would it be five years from today? Would it be four more years on the note? I mean, how does one go back ten years, because that's where we are now, ten years, nine years at least from the date of the repayment of the note, and in an attempt to give back loan money to the corporation, you know, does the corporation then, I guess, it doesn't have to pay it back for four years? But, again, it wouldn't be secured. Could I just change the subject for just a moment and address the statute of limitations issue? Yes, sir. Do you agree that Merck changed the landscape regarding the analysis for the statute of limitations determination? No, Your Honor, because in this case, the district court specifically found under the Merck standard. It found under the inquiry notice, but it also stated in the court's order under both the Federal because the Arizona State standard was reasonable diligence, was a reasonable diligence standard. So it already found under the reasonable diligence standard for Arizona claims, and it specifically, if you look at the last paragraph of the court's order under its Federal claims, it says it discusses that the inquiry notice and reasonable diligence standards in this case merge, and in this case. But that's not true. That's not true, though. Inquiry notice is different than reasonable diligence under Merck. Correct, Your Honor, but the court's order indicated. What page of the court's order are you looking at? Page 11, lines 14 through 17. Having found that plaintiffs were in inquiry notice of alleged wrongdoing, the court also finds that had they exercised reasonable diligence, they would have discovered the alleged fraud. Indeed, the inquiry notice and reasonable diligence tests tend to merge in this case because of what was disclosed. And then in the Arizona one, that was the existing standard. So the court did find specifically under the reasonable diligence standard. So Merck doesn't have any effect on the ruling in this case. But what's your response to whether or not a pecuniary loss is required for a rescission cause of action? Your Honor, I think the court's or the case law is clear that there has to be an injury. And that, I think, in this case would be a pecuniary loss. You have to show some injury. And some of the cases cited, of course, deal with things that are other than monetary injury. So, for instance, you can have a rescission case. There was one case cited with the city of Phoenix where the person was able to rescind because the city had told them that they had to give more land in an intimate domain thing than they were actually required to do. And so they donated more land than possible. And the court said, no, there's an injury there because there's a palpable injury. In this case, they haven't shown any injury. None. They got back all the money, plus interest, plus penalties, and they received stock that was worth half what it was worth. And there's no evidence that they produced about anything else on that matter and have testified that they had no monetary loss. What's that stock worth now? We have no evidence as to the stock worth now. It's not on the record and, you know. Does that really matter for this case, what the stock is worth now? Not for the decision of this case because it's already, you know. If they wanted to bring a claim, they had two claims in the initial complaint saying that the value of the stock dropped or something like that. But then they didn't produce evidence, as they're required to under law, that that was true. And so those things have been dropped. Right. On their brief, they're saying they're not bringing a claim for the loss of value of the stock. So that's why I'm confused as to what the injury is to support the rescission claim. Well, and, Your Honor, we are as well. And that's another reason why, in equity, I mean, to send this back and try to ask the district court to, you know, to rehear this team of facts. He gave up. Am I right that he gave up his board membership as part of this? Well, I do want to bring up that issue because that really has nothing to do with this transaction, because he did not purchase the stock. He gave up his board. He resigned from the board. Now, he didn't resign from the board. He didn't invest in the company because he had to resign from the board. Right. I mean, you know, if the opposite had been true, he said, like, I'll invest in the company if I get a board seat, that might be a claim that was related. But he didn't do the opposite. So it's not that whole claim. I thought he was, I thought the deal was that he was asked in order, that your client in order to get the new investment said, you'll have to go off the board or something to that effect. Your Honor, there is a claim that he was, that he claims now that he was told that it had to be him. Now, somebody had to leave the board. That's under the MOU. Right. He was aware that when Western Oil Sands made its investment, it required that some, that it replace one of the board members. Now, you know, five, seven years later, Mr. Weiss claims, well, yeah, I was told I had to leave the board. I found out later that it wasn't me that had to leave the board, you know, personally. Well, you know, there's a lot of problems with that. One is that he knew that somebody had to leave the board, and it wasn't specified in the case.   So it's not that he had to leave the board. It's that he hadn't noticed that if this was a big concern to him that he should have retained it. But secondly, under their theory of the case that these are two kind of transactions that are one, it is irrelevant to the claim of securities fraud because it doesn't he didn't purchase stock in reliance on the fact that he had to leave the board. He didn't say, I'm only going to invest in this company if you get somebody like me. Leaving the board is his non-monetary injury, arguably. You were so right in suggesting that one of the reasons rescission is a different kind of approach from damages is because equity historically steps in when there are non-monetary injuries. So my question is, is this the kind of injury that would support a rescissory remedy? Your Honor, if that was a, if he had brought a cause of action, which he has not, to say that I, my claim is I was improperly gotten off the board, I was tricked into getting off the board, and my damages are whatever I would have gotten for being on the board, if that had been a claim that was made. No, no. The rescissory would have been I want to be back on the board. But in any event, you're saying he didn't bring that claim. That claim is not in this case. That's a completely separate case. And so that thing is just sort of a red herring out there. That, the security interest, these things have nothing to do, they do not prove they are not damages, neither are they damages, nor are they, even if true, do they prove any element of his claim. They don't prove that he was misled in purchasing the stock or having anything to do with anything. So they're kind of these, it's as if he said, well, you know, I found out that, you know, Weiss was a bad poker player later on, and I wouldn't have invested in any company if I'd found out that he, you know, was a bad character or something. Well, you know, you didn't buy based on the fact that you had to leave the board. You didn't buy $250,000 worth of stock because you had to give up a security interest. So do you take issue, though, with the purported misrepresentations that were articulated? Yes. I mean, I think we argued that below. The Court said, you know, the Court in its order said, well, you know, because I'm finding that statute of limitations and there's no evidence of injury, I'm not going to get to those other issues. But we certainly argued below that the things that he claims are misrepresentations, the facts show, first off, that they weren't misrepresentations, and secondly, they're irrelevant, and third, they're immaterial. And so even if you got to those, even if you got past all that, you know, there's no evidence to support the claims. Any other questions? All right. Thank you, counsel. Thank you, Your Honors. Rebuttal. We'll give you a couple of minutes for rebuttal since we took your opposing counsel over. Thank you, Your Honor. Actually, I would like just to say a brief word about the statute of limitation issue and how Merck plays into this case, because I think Your Honors are correct that Merck, in fact, changed the playing field, and it changed the playing field in a way that's directly relevant to this case, because I think what the district court did here, unfortunately, is it applied the methodology that was specifically disapproved in the Merck decision. Well, but as opposing counsel points out, the district court did also reference reasonable diligence, which is what Merck encapsulates. But what the district court was looking at when it did that, and this is part of that discussion on page 11 of the opinion that counsel pointed you to, was, as Merck argued for in that decision, what the court was looking at was the supposed contradictory nature of the information that was received. That there was a memorandum of understanding that said that after making its initial investment, Western Oil Sands had the option to go forward, and then the representation made to Weiss a few weeks later was that they had, indeed, decided to go forward. Leaving aside the question of whether that's really contradictory, that's the same argument that Merck had made to the Supreme Court, that the fact that they were made to go forward. Do you think it would be appropriate for us to send the case back for the district court to apply Merck specifically? I think so, Your Honor. And I think part of that is because, since it was not an issue, there actually was no evidence about reasonable diligence or what a reasonable diligence would have revealed. The court, district court, was really looking at the supposed contradiction between the MOU and the misrepresentations, and like Merck, saying that that contradiction was enough to create inquiry notice. And Merck specifically said, no, the fact that there's a contradiction is not enough. There has to be evidence that the difference or the misstatement that was made was due to a deliberate misrepresentation as opposed to, say, an innocent mistake. And that issue simply was never addressed below. If there's anything else, Your Honors, I'd be happy to address it. Well, if we send it back for the district court to apply Merck, then the issue still is whether or not there's relief that can be fashioned under rescission. That's the problem. I can't speak for the other members of the panel, but that's the problem I have. And I understand that, Your Honor. And all I can say is that I think, at least under Arizona state law, plaintiffs clearly have a right to rescission under these facts. All right. Thank you, counsel. Thank you. Difficult case. Thank you to both counsel for your arguments in this case.
judges: Hug, Rawlinson, Cjj Rakoff (S. New York), Dj